## McPARLAND–SCANLON LUMBER CO. v. J. J. NEWMAN LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1925.)

No. 4477.

1. Sales ⊜333—On breach by buyer, notice of resale not required.

There is no absolute requirement that, on breach of a contract of sale by the buyer, the seller must have given him notice in order to bind him by a resale.

2. Trial ⊜420—Motion for directed verdict waived by subsequent introduction of evidence.

A motion by defendant for directed verdict at the close of plaintiff's evidence is waived by the subsequent introduction of evidence in defense.

3. Appeal and error ⊜977(1)—Ruling on motion for new trial not assignable as error.

In the federal courts the granting or refusing of a new trial is within the sound discretion of the judge, and error cannot be predicated on his decision.

In Error to the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Action at law by the J. J. Newman Lumber Company against the McParland-Scanlon Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Stone Deavours and Henry Hilbun, both of Laurel, Miss., for plaintiff in error.

W. S. Welch and Ellis B. Cooper, both of Laurel, Miss., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. In this case the record is somewhat unsatisfactory and it is difficult to determine exactly what errors are relied upon for reversal, because of the failure to follow rule 11 of this court, which requires that, when error is alleged to the admission or rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected, and when error is alleged to the charge of the court the assignment of errors shall set out the part referred to totidem verbis. The issues presented to this court may be best understood by a brief statement of the case as appearing from the pleadings and the evidence in the record.

Referring to the parties as they appeared in the District Court, it appears that plaintiff, the J. J. Newman Lumber Company, sold to the Baldwin Lumber Company some 500,000 feet of hardwood lumber, consisting of poplar, oak, and gum, at prices, respectively, of $72.50, $50, and $42.50 per 1,000 The contract was made May 10, 1920, and is in the simple form of an order, calling for delivery at once, payment to be in cash, less 2 per cent. discount. Subsequently, and before the entry of this suit, the Baldwin Lumber Company changed its name by amendment of its charter to the McParland-Scanlon Lumber Company; the corporation, however, remaining the same. Plaintiff has mills at Hattiesburg and Sumrall, Miss., The greater portion of the lumber had already been manufactured, and was piled on the yards at these mills. The balance was to be manufactured in the course of the delivery. It was in contemplation of the parties that defendant would send its inspectors to one or the other of the mills and there take up and receive delivery of the lumber in carload lots, each carload to be invoiced at delivery, and payment to be made within 15 days. No lumber was taken up between September, 1920, and December 1, 1921, at which time all the lumber covered by the contract had been manufactured and piled. Two carloads of lumber were taken up and delivered on December 21 and 24, 1921, respectively. These should have been paid for within 15 days from the invoice date, but checks in payment were not received by plaintiff until the 30th of January. On January 20, 1922, an amendment was made to the contract, by which defendant purchased 100,000 feet additional of poplar at $30 per 1,000, and agreed to take up two carloads per month on the old contract, payment of all invoices to be made in cash less 2 per cent. within 15 days up to $30 per 1,000, and for the balance defendant to give its 60-day acceptance.

In January, 1922, before receiving the checks in payment for delivery in December, plaintiff declined to permit defendant to load any more lumber, but in February, 1922, delivery was resumed, and defendant loaded out three carloads of poplar, which completed delivery of the additional 100,000 feet sold on January 20th. This lumber was not paid for within 15 days as agreed, and plaintiff elected to treat the contract as breached by defendant, declined to deliver any more lumber, and subsequently, in April, 1922, sold the lumber remaining on its yards, without notice to defendant, at prices of $20 per 1,000 for both poplar and gum. The oak contracted for had previously been delivered and paid for. Suit was then brought in the chancery court of Jones county, Miss., to recover damages for the breach of the contract. This suit was removed to the District Court for the Southern District of Mississippi, and the pleadings were recast. The declaration alleged the failure of defendant to take up 117,613 feet of poplar and 137,627 feet of gum, and prayed for damages based on the difference between the contract price and the price at which the lumber was sold, aggregating $9,271.28. Defendant pleaded the general issue, and gave notice of special matter to be offered under the pleading. The case went to the jury, and resulted in a verdict for plaintiff for $8,095.16.

It was the theory of the defense that the plaintiff had waived the terms of the contract as to payment within 15 days, and that by declining to allow the defendant to take up the balance of the lumber the plaintiff had breached the contract. The court, in submitting the case, charged the jury in substance that, if they found the contract had been breached by defendant, they should then assess the damages on the basis of the difference between the contract price and the highest market value of the lumber between the time the contract was breached and the time the lumber was sold, and that plaintiff, if the contract was breached, was not obliged to notify defendant of the resale of the lumber before making it. We gather from the assignment of errors and the argument that this latter portion of the judge's charge is objected to.

[1] There are cases holding that, on a breach of a contract of purchase, notice of intention to resell is necessary, based on the theory that the defendant is entitled to an opportunity to comply with his contract, or to protect himself against fraudulent or collusive sales by the vendor at a price less than the actual market value of the commodity. Doubtless many cases may arise making the application of this rule just and equitable, but the weight of authority is to the contrary. Williston thus states the rule: "In some cases it has been held that, in order to bind the buyer by a resale, the seller must have given notice of his intention to make a resale. But by the weight of authority there is no such absolute requirement." Williston on Sales (2d Ed.) par. 548.

In McDonald Cotton Co. v. Mayo, 86 Miss. 426, 38 So. 372, a case practically on all fours with this case, the Supreme Court of Mississippi recognized the rule requiring notice, but held that under the facts of the case at bar notice was unnecessary. In this case there was evidence for plaintiff tending to show that the prices at which the lumber was resold were the market prices at the time. There was also evidence for defendant that the market price for gum was $20 per 1,000 and for poplar $30 per 1,000 in the months of February, March, and April, 1922, during which period the breach occurred and the resale was made. It is evident from the amount of the verdict that the jury accepted defendant's figures as showing the true market price. Whether the decisions be followed one way or the other, it is evident that no injury was suffered by defendant from the charge.

In the course of the trial a witness for plaintiff, Hurst, its sales manager, testified as to conversations had with representatives of the defendant, urging them to take up the lumber more rapidly, and correspondence between the parties was introduced; the letters from defendant endeavoring to excuse its failure to accept delivery more promptly because of its financial condition—the fact that they were already overstocked, and had no customers in sight. In a very general way error is assigned to the admission of this evidence over objection, on the ground that the amendment of January 20, 1922, created a new contract, and evidence of breaches of the old contract was inadmissible. The amendment referred to did not create a new contract. It merely amended the old contract as to terms of payment and to make more certain the times of delivery. The evidence was admissible as showing the course of conduct between the parties, and on the question of good faith in plaintiff in subsequently declining to make further delivery and in selling the lumber on hand, and also, perhaps, to explain why the contract had not been sooner declared at an end, and the

lumber sold more promptly, in order to further minimize losses. On the whole, this evidence was rather favorable to defendant, as showing plaintiff had waived previous breaches of the contract relative to acceptance and payment. If there could be any doubt as to the admissibility of this evidence, it is quite evident the error was harmless and not reversible.

[2] At the close of plaintiff's case defendant moved for a directed verdict, which was denied. Defendant did not elect to stand on the motion, but introduced further evidence, particularly the testimony as to market value. It is elemental that, when a defendant does not elect to stand upon a motion to direct at the close of the plaintiff's case, and introduces testimony in defense, the motion is considered waived. Furthermore, in this case it is plain that plaintiff had made a prima facie case sufficient to go to the jury.

[3] Error is also assigned to the refusal of the court to grant a new trial. The granting or refusing of a new trial in federal courts is within the sound discretion of the judge, and error cannot be predicated on his decision.

The judgment is affirmed.